UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Paul Klawer, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. 1:22-cv-01171 |
| v. | ) | |
| | ) | Honorable Edmond E. Chang |
| Joe Szadkowski, | ) | (sitting by designation) |
| | ) | |
|     Defendant. | ) | |

### ORDER

Paul Klawer, now a detainee in the Peoria County Jail, brought this *pro se* civil rights lawsuit, 42 U.S.C. § 1983, in the Central District of Illinois. On an earlier screening review, the previously assigned judge allowed a First Amendment retaliation claim to proceed against Tazewell County Correctional Officer Joe Szadkowski. R. 10. The claim arises out of, Klawer says, YouTube videos that Klawer had posted and that were unflattering to police officers. *Id.* According to Klawer, after the videos were posted, Officer Szadkowski retaliated by harassing Klawer and recruiting another detainee to harass Klawer. *Id.* at 3. After two judges serving on the Central District of Illinois entered recusals, this Court was designated to preside over the case, 28 U.S.C. § 292(b). R. 57.

Szadkowski has moved for sanctions, arguing that Klawer sent threatening emails to defense counsel and engaged in discovery misconduct. R. 41. In support of those factual assertions, Szadkowski presented exhibits with the sanctions motion, and then later supplemented the motion with more communications from Klawer. R. 42, 44, 45. Klawer has responded to the motion. R. 56.

### Legal Standard

On the propriety of imposing sanctions for making threats against opposing counsel, federal courts have inherent authority to sanction litigants who willfully abuse the judicial process and conduct litigation in bad faith. *Ebmeyer v. Brock*, 11 F.4th 537, 546 (7th Cir. 2021). It is true, however, that dismissal is the harshest form of sanction and ought to be invoked infrequently. *Id.* Still, "outright dismissal of a

lawsuit," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991), remains an option as an exercise of inherent authority. Dismissal may be appropriate when a litigant abuses the judicial process by leveling "vitriol and frivolous accusations" against opposing counsel or the court, refusing to obey court orders, or making threats. *White v. Williams*, 423 F. Appx. 645, 646–47 (7th Cir. 2011) (non-precedential disposition) (collecting cases) (describing *Petito v. Brewster*, 562 F.3d 761, 762–63 (5th Cir. 2009), in a parenthetical as a case in which the plaintiff "sent threatening e-mails to opposing counsel"). Any sanction must be proportionate to the circumstances. *Langley v. Union Elec. Co.*, 107 F.3d 510, 515 (7th Cir. 1997).

On sanctions for discovery misconduct, Civil Rule 37 authorizes a range of sanctions, including "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v). Under Rule 37(a)(4), evasive and incomplete answers are "equivalent to no answer, and thus a failure to comply with court-ordered discovery." *Ramirez v. T & H Lemont, Inc.*, 845 F. 3d 772, 775–76 (7th Cir. 2016). Discovery sanctions may be imposed when a party displays willfulness, bad faith, or fault. *Am. Nat'l Bank and Tr. Co. of Chi. v. Equitable Life Assur. Soc. of the U.S.*, 406 F.3d 867, 877 (7th Cir. 2005); *see also Williams v. Wahner*, 714 F. App'x. 601, 604 (7th Cir. 2018) (non-precedential disposition).

**Factual Background**

On September 8, 2023, Szadkowski moved to compel Klawer's responses to discovery and to extend the deadlines for discovery and dispositive motions. R. 36. Szadkowski had served interrogatories and document requests (on the topic of exhaustion of administrative remedies) on July 12, 2023, but almost two months later, Klawer had not responded or even provided his initial Rule 26(a)(1) disclosures. R. 36 at 1–2. The prior judge granted the motion to compel on September 11, and directed Klawer to respond to the pending discovery requests and provide the initial disclosures within 14 days. *See* 09/11/2023 Text Order. The compulsion order also warned Klawer that failure to timely respond could result in sanctions, "including dismissing this case …." *Id.*

But Klawer did not respond. Szadkowski brought a first motion for sanctions on October 3, 2023, requesting dismissal of the case. R. 37. Klawer responded with vitriol, asserting that he had answered "all the fucking questions of this fucking court" and yet, according to Klawer, the court had not collected the video evidence that he had requested. R. 38 at 1–2. In an ominous preview, Klawer also warned that he had a "right to war for my life." *Id.* at 2. Rather than actually answer the

2

interrogatories, he attached the interrogatories to the response filing, and in the answer sections, he complained that the questions amounted to "harassment and abuse." R. 38-1 at 1–5.

The prior judge denied the sanctions motion on October 30, 2023, but again directed Klawer to respond to Szadkowski's discovery requests and to provide initial disclosures within 14 days. R. 40 at 4. The disclosure order warned that the prior responses to discovery were inadequate, *id.* at 3, and that failure to respond would result in sanctions, including dismissal, *id.* at 5.

The fourteen-day deadline came and went. Klawer still did not respond to discovery or provide initial disclosures. R. 41 at 1–2. Instead, on November 7, 2023, Klawer emailed defense counsel photos of unrelated grievances and a Freedom of Information Act request. R. 41-1, Exh. A. Two weeks later, on November 21, defense counsel emailed Klawer, directing his attention to the disclosure order, and asking Klawer to confirm that the produced records were all the records that he had. R. 41 at 2; R. 41-2, Exh. B.

On that same day (November 21), Klawer responded with vitriol and frivolous accusations, accusing counsel of abusing Klawer's children and killing his wife. He wrote, "Here's your disclosure the court better tell the truth and nothing but the truth so help me God or I'll fix it for you all life for life you abused me and my children killed my wife[1] this is not a joke Mr Moore this is my life do you understand me and it's in your best interest to stop patronizing it and to start showing it value." R. 41-3, Exh. C at 2.

That same afternoon, Klawer continued to level accusations, this time including against the prior judge: "You have my word that this Injustice will not stand I swear to God," and then shortly thereafter, "That goes for the judge of no integrity as well Mr Collins[2] if he would like to stick up for an actor misconduct it is a Act of misconduct as well to stand up for misconduct is missed the conduct in the

---

[1] Throughout this case, Klawer unsuccessfully tried to amend his complaint to bring claims concerning a "litany of alleged wrongs" committed against him and his wife. R. 10 at 2. The only claim at issue, however, is the claim as to Officer Szadkowski.

[2] A review of the docket shows that Klawer has repeatedly referred to Judge Bruce as "Collins," although the spelling varies. *See* R. 48 at 1, R. 49 at 1, R. 50 at 1, R. 51 at 2, R. 55 at 1, R. 56 at 1.

Constitution protects us from infringing on our rights from any judge foreign land anywhere." R. 41-3 at 1.

Around one week later, the intensity of the accusations increased to an outright threat against defense counsel. On November 27, Klawer sent the following email to defense counsel: "I'm a Christian man I believe wholeheartedly and defending our future and our children and that means from yourself I don't want to kill nobody let alone hurt nobody but you're not going to call me violent for standing up for the truth and my children when you're the ones abusing and neglecting us and suppressing evidence and suppressing our voices that's not going to be our future *I will kill you* or anybody I have to for our children sake do you understand me." R. 41-4, Exh. D at 3 (emphasis added). In an email, defense counsel responded by asking Klawer to stop his threatening and improper communications, or he would involve the Court and the proper authorities. *Id.* at 2.

Klawer did not stop. Two minutes after defense counsel asked Klawer to stop, Klawer responded and doubled down: "It's not a threat it's a promise I have a right to defend my life and my children where you cease to suppress and abuse," and then, one minute later, "And if that's the fate you want that's the fate you will get." R. 41-4, Exh. D at 2.

That was not the end. A few days later, on December 1, Klawer continued to threaten defense counsel and, this time, the emails also threatened the prior judge. R. 42, 44, 45. In one email, Klawer wrote, "Tell Collins [Judge Bruce] *if he plans to live* for his children to stop suppressing evidence of misconduct or he can digest as easily as you can for suppressing that evidence with your fellow corrupted officers and agents you will not infringe on our rights any longer you will not treat us as slaves any longer or *you will all die*." R. 44 at 3 (emphases added).

One minute later: "And tell that judge if he doesn't take my warning serious the way he's been holding my kids over my wife and I said torturing my wife Double Jeopardy my wife in the federal court tell him *I'll blow his f****** brains out in broad daylight* and put on his Tombstone exactly how much value he gave our future by suppressing evidence of misconduct let me make that perfectly clear to you." R. 44 at 3 (emphasis added). A few minutes later, another threat: "Be a good boy and tell Collins that *he can die* just as fast too for sticking up for misconducting not defending our future this depends on our grandchildren's children's and if you're just going to corrupt that future well f*** you yippee ki-yay mother f****** there's a lot of people watching let's have fun we can blossom and make peace or we can make a bloody mess what do you want piece of War." *Id.* at 2 (emphasis added).

4

## Analysis

In evaluating the sanctions motion, the threshold question is whether to hold an evidentiary hearing. Here, there is no reason to do so. Klawer has been given an opportunity to respond in writing to the sanctions motion. *Martin v. Redden*, 34 F.4th 564, 569 (7th Cir. 2022). The response does not offer much in the way of explaining his behavior. Instead, Klawer accuses the prior judge of misconduct for failing to obtain video evidence of the alleged incident with Szadkowski and baselessly accuses the judge of working with Szadkowski. R. 56 at 1–2. He adds that the judge "has no problem" accusing Klawer of misconduct, but failed to criminally charge Szadkowski for his misconduct. *Id.* at 3. None of these assertions require an evidentiary hearing to resolve a genuine factual dispute. With the response in place, such as it is, the Court moves on to the merits of the sanctions motion.

It should go without saying that no litigant may threaten to kill opposing counsel and the presiding judge because of the litigant's unhappiness with how the case is proceeding—or for any other reason. To recap, here is a sampling of frivolous accusations and murder threats:

▶ "you abused me and my children killed my wife this is not a joke Mr Moore this is my life do you understand me," R. 41-3, Exh. C at 2 (against defense counsel).

▶ "That goes for the judge of no integrity as well Mr Collins if he would like to stick up for an actor misconduct," R. 41-3 at 1 (against the prior judge).

▶ "I don't want to kill nobody let alone hurt nobody but you're not going to call me violent for standing up for the truth and my children when you're the ones abusing and neglecting us ... *I will kill you* or anybody I have to for our children sake do you understand me." R. 41-4, Exh. D at 3 (emphasis added) (against defense counsel).

▶ "Tell Collins [Judge Bruce] *if he plans to live* for his children to stop suppressing evidence of misconduct or he can digest as easily as you can for suppressing that evidence with your fellow corrupted officers and agents you will not infringe on our rights any longer you will not treat us as slaves any longer or *you will all die.*" R. 44 at 3 (emphases added).

▶ "And tell that judge if he doesn't take my warning serious the way he's been holding my kids over my wife and I said torturing my wife Double Jeopardy my wife in the federal court tell him *I'll blow his f\*\*\*\*\*\* brains out in broad*

*daylight* and put on his Tombstone exactly how much value he gave our future by suppressing evidence of misconduct let me make that perfectly clear to you." R. 44 at 3 (emphasis added).

▶ "Be a good boy and tell Collins that *he can die* just as fast too for sticking up for misconducting … and if you're just going to corrupt that future well f*** you yippee ki-yay mother f****** there's a lot of people watching let's have fun we can blossom and make peace or we can make a bloody mess what do you want piece of War." R. 44 at 2 (emphasis added)

Those accusations and threats readily justify dismissal of this case for abuse of the judicial process. *See, e.g.*, *Mohammed v. Anderson*, 833 F. App'x. 651, 655 (7th Cir. 2020) (non-precedential disposition) (holding that dismissal was warranted where plaintiff implicitly threatened violence at a deposition); *Donelson v. Hardy*, 931 F.3d 565, 569–70 (7th Cir. 2019) (holding that dismissal was warranted where plaintiff made baseless accusations against opposing counsel and refused to answer deposition questions); *Waivio v. Bd. of Trustees of Univ. of Illinois at Chicago*, 290 F. Appx. 935, 937 (7th Cir. 2008) (non-precedential disposition) (affirming dismissal where plaintiff threatened to kill opposing lawyer and accused two lawyers of killing her baby, among other "threatening and hostile conduct").

It is true that dismissal should be something of a last resort. But it is the proportionate response here. First, Klawer plainly acted willfully, that is, he knew what he was doing. The content and number of the communications by themselves confirm that Klawer was saying exactly what he intended to say. He also had to take the time to type out the accusations and threats in emails. It is not as if this were a one-time, spur-of-the-moment expletive. Across multiple days and emails, Klawer leveled vitriolic and frivolous accusations, and then escalated into murder threats. Indeed, defense counsel asked Klawer to stop, warning him that counsel would report the threats to the Court and to the authorities, R. 41-4, Exh. D at 2, yet Klawer continued on, both that day, *id.*, and other days, *e.g.*, R. 44 at 2–3. And the abuse of process here culminated into what non-lawyers know full well amounts to misconduct: murder threats. It is not as if a *pro se* litigant is being sanctioned for making frivolous legal arguments that non-lawyers might not understand have no reasonable basis in law.

Second, no lesser sanction can adequately address the abuse of process. A monetary sanction alone is not enough because Klawer is indigent, *see* Text Order (05/27/2022) (granting *in forma pauperis* application), so there is not much financial disincentive. More importantly, defense counsel should not have to continue to have contact with someone who has threatened to kill him. Back-and-forth emails with

someone who threatened counsel's life would be burdensome enough, but under no circumstances should a lawyer (or any person) be required to speak directly to the threatener, much less be required (aside from the Sixth Amendment right of confrontation) to meet them in person, as would be required for hearings, depositions, and a trial. On top of this, the threats were aimed at influencing the judicial process itself, attempting to get defense counsel to back off the discovery requests. Also, remember that the emails to defense counsel urged counsel to tell the judge about Klawer's threats against the judge. There too Klawer was trying to compel the prior judge to allow Klawer to gather the purported video evidence—put another way, trying to influence the judicial process through threats. Based on the frivolous accusations and murder threats, the case is dismissed with prejudice.

For completeness' sake, dismissal also would have been justified by Klawer's willful refusal to comply with discovery orders after having been given multiple chances and warnings. In his response, Klawer contends that he submitted grievances and FOIA requests with his documents in filing this case, so he should not have had to provide them in discovery. R. 56 at 2. But no documents like that are attached to Klawer's original complaint. R. 1. Yes, Klawer did include grievances with certain of his filings, *see* R. 35-1, but filing those attachments would not excuse Klawer's failure to *respond* to Szadkowski's discovery requests, including by averring that those are all the relevant documents he possessed and answering the interrogatories about the documents.

As another excuse, Klawer contends that the Court should have obtained video evidence for him. Jumping to court-ordered discovery interventions is not how civil litigation works. The prior judge explained to Klawer multiple times how to request the video evidence. *See* R. 10 at 6 (explaining that discovery requests should be sent directly to defense counsel after a scheduling order was entered); R. 20 at 2-3 (denying Klawer's motion to subpoena the video evidence because a scheduling order had not been entered and advising Klawer to serve Szadkowski with a request for production through his attorney after it was); R. 22 (scheduling order explaining discovery process); *see also* Text Order (05/17/2023) (explaining that discovery requests should be sent directly to defense counsel). Even with those explanations, Klawer did not serve Szadkowski with requests for production; in any event, no video existed of the relevant location in the jail on the date of the alleged incident. R. 52 at 1–2. The attempts to obtain video evidence provide no excuse for Klawer's failure to participate in discovery. *See Burke v. Prudential Ins. Co. of Am.*, No. 02 C 5910, 2004 WL 784073, at *4 (N.D. Ill. Jan. 29, 2004) (observing that one party cannot withhold discovery

7

because it believes another party has done so, as "[s]elf-help in litigation is not condoned by the courts.").

For all these reasons, Szadkowski's motion for sanctions is granted and the case is dismissed with prejudice. The Court also finds that an award of $1,029 in attorney's fees for the preparation of the sanctions motion, as supported by counsel's declaration, R. 41-6, Exh. Attorney Declaration, is appropriate. *See* Fed. R. Civ. P. 37(b)(2)(C) (litigant who disobeys discovery order must pay "reasonable expenses, including attorney's fees, caused by the failure unless the failure was substantially justified or other circumstances make an award of expenses unjust."). Klawer mounted no genuine response against the sanctions motion, and the intensity of the misconduct justifies an award of attorney's fees to compensate the defense for having to expend fees on bringing the motion. Klawer probably does not have the funds to pay right away, but Szadkowski can use the usual post-judgment collection efforts to collect over time. The hours expended (4.2 hours) and quoted rate are reasonable for putting together the filing. (And Klawer did not challenge the hours or rate.)

Klawer's other motions, R. 46, R. 49, R. 50, R. 51, R. 53, R. 54, are terminated as moot given the dismissal. None of the motions affect the sanctions motion and the appropriate relief. The Clerk is directed to enter final judgment.

If Klawer wishes to appeal, then he must file a notice of appeal with the Central District of Illinois within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Klawer appeals, then he will be liable for the $605.00 appellate filing fee no matter the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, then Klawer could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, then the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Ibid.* If Klawer seeks to proceed *in forma pauperis* on appeal, then he must file a motion to proceed *in forma pauperis* in the Central District of Illinois, stating the issues that he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1).

ENTERED:

*Edmond E. Chang*
Honorable Edmond E. Chang
United States District Judge

DATE: April 11, 2024